**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------X
GHOSTBED, INC. and WERNER MEDIA            :
PARTNERS, LLC D/B/A NATURE'S SLEEP,        :
LLC,                                       :   Misc. No: 1:17-mc-00474
                                           :
            Plaintiffs,                    :   Action pending in U.S. District Court
                                           :   for the Southern District of Florida
      v.                                   :   Case No: 0:15-cv-62571
                                           :
            Defendants.                    :
                                           :
CASPER SLEEP, INC., RED ANTLER, LLC, and   :
ICS INC.,                                  :
                                           :
-----------------------------------------------------------------X
```

**NON-PARTY COREY EULAS'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Non-party, Corey Eulas ("Eulas"), hereby files his Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Compliance with Plaintiffs' Subpoena, and states the following in support thereof:

**I.     INTRODUCTION**

Corey Eulas, a non-party to the underlying litigation pending in the U.S. District Court for the Southern District of Florida (the "Florida Action"), had contracted with Defendant Casper Sleep Inc. ("Casper") to provide consulting services related to Search Engine Optimization ("SEO") to assist Casper with increasing its online visibility. Plaintiffs previously subpoenaed Eulas for documents in the Florida Action on or around May 25, 2017 (the "First Subpoena"). Eulas objected to the First Subpoena based on overbreadth and, after Plaintiffs agreed to narrow the scope of requested documents considerably, he spent hours conducting searches of his electronically stored documents to comply with that subpoena. Now, Plaintiffs seek to impose an

additional burden on Eulas through a second subpoena (the "Second Subpoena"), which is the subject of their present Motion to Compel.

The Second Subpoena seeks documents arising from Plaintiffs' newly-filed Second Amended Complaint, which added false advertisement claims against Casper. These new claims allege in relevant part that Casper used SEO techniques to limit the visibility of third party websites that allegedly posted negative reviews of Casper mattresses (the "SEO Claim"). There is no case law authority whatsoever to support Plaintiffs' SEO Claim, inasmuch as the entire SEO industry is built around changing the visibility of such engine results. Casper has filed a Motion to Dismiss the SEO Claim in the Florida Action [Florida Action, D.E. 165], and such motion presently remains pending.

But even if Plaintiffs' SEO Claim is found to be legally sufficient, the breadth of the Second Subpoena is so huge as to go well beyond any conceivable relevancy. As set forth below, the Second Subpoena thereby imposes an undue burden on Eulas lacking any proportionality to the needs of the case. Such undue burden is even more pronounced where, as here, Eulas is a non-party to the Florida Action and an individual with limited resources. Accordingly, this Court should deny or greatly limit Plaintiffs' Motion to Compel.

## II. FACTS

The Florida Action involves competing claims of trademark infringement and false advertising between Plaintiffs and Casper, both of whom manufacture and sell mattresses directly to consumers via the internet. Plaintiff filed their Complaint on December 8, 2015, their Amended Complaint on April 4, 2016, and their Second Amended Complaint on September 27, 2017—just four months shy of the close of discovery. The Second Amended Complaint asserted Plaintiffs' new SEO Claim for the first time.

Eulas, the owner of a digital marketing company, has provided SEO consulting services to Casper since October 2015. On October 17, 2017, Plaintiffs served their Second Subpoena on Eulas, requesting production of eight different categories of documents. On November 2, 2017, Eulas served his Responses and Objections to Plaintiffs' Second Subpoena (the "Objections") (a copy of the Objections is attached to the Declaration of Craig Whitney ("Whitney Decl."), filed concurrently herewith, as Exhibit A). On December 1, 2017, Plaintiffs served their Motion to Compel, which acknowledges, based on discussions between counsel, that Requests 6-8 are no longer being sought by Plaintiffs, and that only Requests 1-5 in the Second Subpoena are subject to their Motion. (Dkt No. 3 at 2.)

The legal standard governing Plaintiffs' Motion to Compel Requests 1-5 is discussed in Part III below, and the legal arguments sustaining Eulas's Objections to Requests 1-5 are discussed in Part IV below.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 45 authorizes the service of subpoenas on non-parties to litigation, but it also affords protections for persons subject to the subpoena. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996). Rule 45 states in relevant part that the court "must quash or modify the subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A)(iv).

Whether a subpoena imposes upon a witness an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. *See Concord Boat Corp.*, 169 F.R.D. at 48-49 (internal citations omitted) (finding that the subpoena at issue imposed an undue burden). The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the

proceedings. *See Night Hawk Ltd. v. Briarpatch Ltd.*, *LP*, No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). The scope of discovery under a subpoena is the same as that under Rule 26(b) and Rule 34. *See Tank Connection, LLC v. Haight*, No. 13 Civ. 1392, 2015 WL 3571424, at * 3 (S.D.N.Y. June 5, 2015).[1]

To the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter, it runs the greater risk of being found overbroad and unduly unreasonable. *See Concord Boat*, 169 F.R.D. at 50 (quoting *U.S. v. I.B.M.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979); *see also Cooper v. Hill*, No. 12 Civ. 1227S, 2016 WL 7366976, at *2 (W.D.N.Y. Dec. 20, 2016) (courts tend to grant motions to quash when subpoenas are so broad that they seek "any and all documents relating to" the subject matter in question).

Moreover, "the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" *Concord Boat*, 169 F.R.D. at 50 (quoting Fed. R. Civ. P. 45(c)(2)(B)) ("an order to compel production shall protect any person who is not a party from significant expense . . . ."). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Travelers Indem. Co. v. Metro. Life Ins.,* Co., 228 F.R.D. 111, 113 (D. Conn. 2005); *Tank Connection*, 2015 WL 3571424, at *4 ("the Court must ensure reasonable steps are taken to avoid imposing undue burden or expense on the subpoenaed entity . . . .").

---

[1] Defendants argue incorrectly in their Motion to Compel that *Tank Connection* stands for the proposition that a non-party's discovery objections are treated the same as those made under Rule 34. (Dkt No. 3 at 6.) What *Tank Connection* actually said, however, was that the scope of discovery under a subpoena is the same as the scope under Rule 26 and 34. Thus, the Court "must examine whether a request contained in a subpoena *duces tecum* is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production." *Tank Connection*, 2015 WL 3571424, at *3.

## IV.     ARGUMENT

Requests 1-5 of the Second Subpoena are facially overbroad and thereby impose an undue burden on Eulas as a non-party.

### A.      Request No. 1

Request Number 1 seeks the following: "Documents relating to any communication between You and Casper related to Search Engine Optimization performed by Casper or any Person on behalf of Casper." (Whitney Decl., Ex. A at 3.)

Even assuming SEO discovery is relevant despite the pending motion to dismiss, Request 1 is overbroad and unduly burdensome. Eulas's entire business relationship with Casper is based exclusively on providing SEO-related services to Casper. Thus, <u>almost all</u> of his communications with Casper would be related to SEO, thereby rendering Request 1 overbroad and unduly burdensome on its face. Plaintiffs' claims are limited, however, to the use of SEO in a specific manner – namely to limit the visibility of specific third party websites that allegedly posted negative reviews of Casper mattresses. Consequently, any discovery related to the SEO claims should be limited to documents addressing *that claim*. Plaintiffs are not entitled to *every* document related to SEO of any sort.

In the Second Amended Complaint, Plaintiffs identified three mattress reviewers whose reviews allegedly were the subject of Casper's supposed negative SEO attacks: (1) Sleepopolis; (2) Mattress Nerd; and (3) Sleep Sherpa. Thus, Plaintiffs' request should be narrowly tailored to encompass only documents that deal with limiting visibility of those mattress reviewers' sites, to the extent any such documentation exists. In an effort to resolve this issue without Court

intervention, Eulas offered to search for that information and even offered to add two additional mattress reviewers, Slumber Sage and Mattress Clarity.[2]  Plaintiffs, however, refused that offer.

### B. Request No. 2

Request Number 2 seeks the following: "Documents relating to any communications between You and Terakeet related to Search Engine Optimization performed by Casper or any Person on behalf of Casper."  (Whitney Decl., Ex. A at 4.)

As with Request Number 1, this request also is overly broad and unduly burdensome.  Again, Plaintiffs seek all communications related to all SEO without limitation even though the claims in the Second Amended Complaint are limited to a specific type of SEO aimed at the specific mattress reviewers named above.  Accordingly, if this Court compels Eulas to produce documents pursuant to the Second Subpoena, it should limit such production to those documents— to the extent they exist—related to limiting the visibility on the internet of the five mattress review websites identified by Plaintiffs.

### C. Request No. 3

Request Number 3 seeks: "Documents relating to any communication between You and Denton Anderson related to Search Engine Optimization performed by Casper or any Person on behalf of Casper."  (*Id.*)

---

[2] In Request Number 6 of the Second Subpoena, Plaintiffs identified all five of these mattress reviewers.  As stated, in an effort to avoid unnecessarily wasting judicial resources, Eulas agreed to produce certain types of documents pursuant to that request as to all five of those reviewers.  Eulas made the same offer with respect to Request Numbers 1-4, but Plaintiffs rebuffed that offer. Should the Court modify the Second Subpoena rather than quash it in its entirety, Eulas seeks to produce only documents related to these five mattress reviewers Plaintiffs identified.

Eulas's argument with respect to these documents is the same as those already set forth above. To the extent this Court is going to permit discovery of Eulas, it should be limited to documents relevant to the actual claim in the Second Amended Complaint.

### D.    Request No. 4

Request Number 4 seeks: "Documents relating to any communication between You and Premier Placement related to Search Engine Optimization performed by Casper or any Person on behalf of Casper." (*Id.*) Eulas's position on this request is the same as that regarding Request Numbers 1 through 3.

### E.    Request No. 5

Finally, Request Number 5 seeks: "Documents relating to any activity undertaken by You or any other party relating to Casper." (*Id.* at 5.)

This request is overly broad and unduly burdensome in that again it encompasses Eulas's entire relationship with Casper *without any limitation*. Responding to this request as written would require Eulas to search, at a minimum, every communication he ever had with Casper and any party he may have spoken to or worked with on behalf of Casper. This request does not satisfy Plaintiffs' burden to "take reasonable steps to avoid imposing undue burden or expense" on Eulas, a non-party to the Florida Action. *See* Fed. R. Civ. P. 45(d)(1). Additionally, this request is cumulative not just of the other requests made in the Second Subpoena, but also of the requests previously made in the First Subpoena. (A copy of the First Subpoena is attached to the Whitney Declaration as Exhibit B.) Accordingly, Eulas should not be required to provide any documents responsive to this request.

## V.     CONCLUSION

Based on the foregoing, nonparty Corey Eulas respectfully request that this Court deny Plaintiffs' Motion to Compel in its entirety or modify the Second Subpoena to correspond with the claims in the Second Amended Complaint as outlined above.

Dated:  New York, New York
        December 15, 2017

                                      FRANKFURT KURNIT KLEIN & SELZ, P.C.

                                      By: /s/ Craig B. Whitney
                                           Craig B. Whitney
                                      488 Madison Avenue, 10th Floor
                                      New York, New York 10022
                                      Tel: (212) 826-5583
                                      cwhitney@fkks.com

                                      *Attorneys for Non-Party Corey Eulas*